All right, our third case is case number 25-1375, Jesse Near v. Enerco Group, Inc. First, we will hear from Mr. Christopher Moore on behalf of the appellant. And then we will go to Mr. Edward Moore III and Mr. Schilling. All right. Yes, sir. Mr. Moore. Good morning, Your Honors. May it please the Court. My name is Chris Moore. I'm the attorney here on behalf of the estate of Douglas Belger, the appellant today, and the plaintiff in the lower court below. Mr. Belger died in the hospital while receiving medical care for extensive burn injuries he sustained as a result of his clothing having ignited. The source of that clothing ignition was a propane tank top gas heater or space heater. It's essentially a heating element that screws onto the top of a 20-pound propane gas tank much like what most people associate with gas grills. It is lit with a flame source turned on and it heats things in that given area. Mr. Belger's estate brought a design defect claim under South Carolina law against the manufacturer of the propane gas tank top heater, which is Enerco, the appellee. The primary contention on appeal from the district court's order, which did a couple of things. First, it denied our request for the district court to certify a question to our state supreme court. That question was dispositive in the district court's order. And then her order also excluded our human factor warning experts' adequacy opinions and granted summary judgment on that ground. There was also a motion to exclude our engineering expert. And that motion was deemed mooted by the district court's decision on what I'm going to call the warnings trump design issue. The district court very clearly felt bound by this court's decision in the Hickerson v. Yamaha case. And that is the position that we primarily take issue with on this appeal. So on the certification question, you base your claim on, I guess, Branham. You said Branham is more appropriate, but we have this Hickerson case from the Fourth Circuit, but Branham predates Hickerson. Do you think that Hickerson is wrongly decided? Yes, I do, as a matter of South Carolina state law. And here is why. And it's a curious thing to me, I will be frank. Hickerson does not reference the Branham case, which, as long as I've been doing this in South Carolina, that is kind of the most recent big development in our product liability law. And the case finds no reference in the text of Hickerson. I don't believe that the parties to the district court in Hickerson argued it. There was some passing reference to the Branham decision by the Appalese Council at oral argument in Hickerson. But this issue just did not come up. In the oral argument at Hickerson before the Fourth Circuit, both Judges Agee and Judges Floyd said, why are you not asking us to certify this question to the South Carolina Supreme Court? We recognize that in the prior decisions of the lower intermediate courts, there is some discussion of this comment J in 402A. However, the South Carolina Supreme Court has never ruled that the lack of an inadequate product warning, or I'm sorry, the existence of an adequate product warning will always exclude a design defect claim. That has never been held by the South Carolina Supreme Court. Well, but didn't the legislature say something about that? They did. In 1974, when our product liability statute was enacted, it adopted the comments and explicitly 402A. They call it the 402A Act in South Carolina. However, in Branham in 2010, which postdates the four primary cases that the Fourth Circuit looked to in applying, had to South Carolina, it was not asked to certify that question to the South Carolina Supreme Court. In looking, I'm sorry, in Branham, what happened was the Supreme Court of South Carolina said, we are going to move away from 402A for purposes of design defect claims in South Carolina law. Up until that point under South Carolina law, a design defect claim could be brought under two theories. The consumer expectations test, you could also bring it under the risk utility test. And there was certainly some reference in our precedence to that risk utility test. But a design defect claim could just as equally be brought under the consumer expectations test, which is comment G of 402A. And so what the Supreme Court did in Branham in August of 2010 is said, we are no longer going to accept consumer expectations in design defect cases. And we are going to look to the restatement third, section 2B, and we hold that the risk utility test is now the exclusive test for design defect cases in South Carolina. What do you make of, in Branham, they go back and cite that Supreme Court Clayton case? Yes. I would submit that if you go back and you read Claytor, Claytor is unremarkable and simply says that if there is no proof of a design defect, if there is no proof of a manufacturing defect and there is no inadequacy in the packaging of the product, then it cannot be held to be unreasonably dangerous. It does not say that a lack of an inadequate warning precludes a design defect claim in all circumstances under any product liability theory. There are admittedly the Allen case and the Anderson and then the Curcio or Circio case that pay reference to that. But I think if you go back and look, the Curcio case was actually reversed by our South Carolina Supreme Court on another issue. They said there was sufficient evidence of inadequacy of that warning such that the case was properly submitted to the jury and they reinstated the jury's verdict on that issue. And because of the two-issue rule that we have in South Carolina, there was no need for them to delve into the substance of that other opinion, which is that comment Jay read literally would seem to preclude a design defect case by the existence of an adequate warning. And so I think it's, Branham is the key. Why the Hickerson court was not presented with that, I don't know, but admittedly the Hickerson panel said, why haven't you asked us to certify this to the South Carolina Supreme Court? Because we clearly have no guidance from them. So on Branham, do you think the Supreme Court, the South Carolina Supreme Court, there adopted the third reinstatement entirely in its comment? It explicitly adopted it for purposes of design defect cases. And so that is our explicit rule. We have to follow the third restatement, Section 2B, for design defect cases. And the comments inform that. If you look, and we've cited a number of cases in our brief, Judge, if you look at what our district courts, what our state courts have done post-Branham, it's replete with references to the restatement third, Section 2B. And if you look into the text of Branham, Chief Justice Kittredge is very careful to say, there's this prefatory statement before they announce their holding that says, you know, we are mindful of what the legislator did 50 years ago in the statute. However, we also are mindful that they're looking to the American Law Institute, which does the restatement, and advances in our law. They would look approvingly on our moving away from 402A for design defect claims and adopting the rule of Section 2B of the third restatement of torts. And if you look in the comments of the third restatement of torts, there are a number of references that would apply to a design defect claim, including that warnings are never a substitute for the provision of a reasonably safe design. Obviousness of risk does not necessarily obviate the duty to provide a safer design. Essentially, warnings, you know, while good, and yes, there are some products that will require a warning in order to be made safe, that that is not the end-all, be-all, in that you can still have a design defect claim. Around the same time, as Your Honor is aware, that Branham came out, there was the Watson v. Ford decision in South Carolina that clearly delineated the three types of product defects. Independent theories of relief that South Carolina courts recognize. There are design defect claims. There are manufacturing defect claims. There are warnings defect claims. And the district court in the Marshall case was presented with a similar, almost this exact same argument, said, look, you know, these are independent theories of relief. The notion that the lack of an adequate warning would somehow defeat an otherwise viable design claim is not the law. That would require every design defect claim to have as part of their burden of proof the absence of an adequate warning. But that's not really what that tests. So you're aware that a panel of this court is not able to abrogate a decision of a prior panel's decision. And so following that rule, we would be bound by this court's decision in Hickerson. But this is an odd circumstance where we have, as you say, a state Supreme Court case that predates the panel case, which seems to go the other way. And so I guess I'm struggling. If you're aware of a case that says that where there's a, you know, in this type of circumstance where you have a state Supreme Court decision, the highest court of the state conflicts with a subsequently decided circuit authority interpreting the same question that we're bound by the state Supreme Court decision and not by our own prior precedent. So I'll be careful about that. But you cannot abrogate Hickerson. What I would say is that we are asking you to certify the question under our Supreme Court, appellate court rule 244, and that you absolutely have the power to do that. You have the power to do that sua sponte, whether I even ask the court to do that or not, which we have. And the circumstances for when that is appropriate are that there is no controlling Supreme Court precedent, which there is not. There still is not. That was recognized by this court in Hickerson. And since that time, that has not changed. Hickerson has never been cited in any of our South Carolina appellate courts. But are you saying that Branham is in fact controlling? Yes, Branham is controlling. So there is controlling Supreme Court precedent from your state Supreme Court. Branham is controlling as to design defect claims only, and that is how we brought this claim. This was not brought as a warnings defect claim. And the law in Branham is the... I guess I'm struggling with this notion that we would certify a question to the state Supreme Court that the state Supreme Court has already answered. Well, this question has not been answered. I'm sorry. The test for a design defect claim is what Branham has set forth. The question that we ask to have certified to our Supreme Court is, does the existence of an adequate warning preclude in all circumstances a design defect theory, which is essentially what's happening? That actually runs contrary to Branham. Branham doesn't say that. Branham says that in a design defect claim, you have to, you know, you have to show that the product is reasonably dangerous and that that unreasonable danger can be remedied by a feasible alternative design, full stop. It doesn't say, oh, and you also have to show that the warnings given were inadequate. And that is the problem here, is that Hickerson looked to cases that predated Branham and does not discuss Branham. And there is still been... And what they said in Hickerson was that we've looked at the state Supreme Court precedents and there are none. And so all we have left to look at, because you haven't asked us to certify the question, are the intermediate appellate court's decisions. And there's four of those. Here's what they are. Here's what they say. Well, none of those cases have been cited in any of our state court decisions post Branham. The only place you will find them for this proposition is in our district court, much like, as in Hickerson. I would also say that the facts of this case, so our second point is that alternatively, the district court should be reversed for excluding totally our warnings, our human factors expert. Well, if they're correct, if the judge is correct in excluding Dr. Gergel, isn't your case pretty much dead in the water? If the rule of Hickerson holds. Well, yeah. Hickerson is a problem for you. Absolutely. That's why we're asking you to send it to the Supreme Court, because it is a... But getting back to the expert, if the expert's not allowed to testify, you just can't prevail in this case, can you? Oh, no, that's not true, because we're not trying to prove a warnings defect case. We're trying to prove a design. I see I'm out of time. You can continue and answer. So, and the problem with what the district court did here was the exclusion of Dr. Gergel, and the standard applied to her was that which you would apply to a warnings expert in the context of a warnings defect case. It was, we were not alleging that the lack of a warning caused Mr. Belger's injury. We were very clear about that. We could not, Mr. Belger never got the owner's manual. This was not his product. He didn't purchase it. He never saw the packaging. And so this notion that we were advancing an alternative warning, that we needed to focus group and test and run through that rigmarole to see if it changed people's behaviors, in other words, was that warning causal to his injury, was not something that we could do. He never received any of the warnings with the product outside of what was stamped on the reflector shield of the, and so. Did she make a decision on any studies or scientific basis besides her own personal opinion? I mean, you know, district court judges have discretion on issues of expert witnesses, and it seems to me the district court reviewed the materials and said this isn't, this doesn't pass muster under Daubert. Well, she, the criticism I have of that is that she, she said, well, there was no testing. She didn't look at photographs. She did not interview witnesses. All those things were unnecessary for what she was saying in this case, which is a more general opinion about what is the design hierarchy for an engineer, because we're looking at this as a design case. In other words, if you can design the hazard out, which we've demonstrated, you do that first. You don't rely on a product warning, because we all make mistakes. Well, she's your product warning expert, right? She's not your design defect expert. Well, she is a human factors expert and a warnings expert, but we were trying to use her in a way to say when you're designing a product, here's what you look at. Here are what your options are. But why was it an abuse of discretion? That's a pretty high standard for us to say it was an abuse of discretion. It was an abuse of discretion because she, the standard that she held her to under 702 were from cases in which the warnings defect was what was being advanced as opposed to just a design defect. Her criticisms of just the general idea that you would rely on a warning rather than actually just make a better guard were not something that you, I mean the work that she did in the case I thought was sufficient to give those opinions. She also analyzed it with the relevant industry standards, the ANSI standards as how you do warnings. I mean, for example, in the Hickerson case, the on-product warnings were pretty robust and they were in two locations. And that was kind of the issue that the district court and the Fourth Circuit had there. And Mrs. Hickerson admitted, I didn't read them and in hindsight I probably wouldn't go back and read them and it didn't change my behavior. And she violated all four. She was on the jet ski in the inappropriate clothing with a ten-year-old driving under the influence of alcohol and there was four people on it when there should only have been three. So I'll sit down unless you have any other questions and reserve five minutes for rebuttal. All right. Thank you. You have some time reserved. All right. Yes, sir. Mr. Moore. May it please the court. Ray Moore from Columbia, South Carolina, Your Honor. Good to see you again. Members of the court, the trial court did not abuse its discretion in declining to certify a question to the South Carolina Supreme Court. The district court applied the correct legal standard and the district court supplied substantial justification for her decision, most prominently this court's decision in Hickerson. The district court understood and applied the correct legal standard, both in her order and in the colloquy from the bench during the hearing, which is in the record, she understood that the question is was South Carolina law clearly insufficient and if only it's clearly insufficient, then the district court should have certified the issue. Secondly... Let me ask you this, Mr. Moore, because it's so we have Hickerson, which is one of the cases that the South Carolina Court of Appeals has cited, most of them I think predate Branham, and then we have Branham that cites Claytor. Branham seems to adopt some parts of the third reinstatement, at least the risk utility test, but then it cites Claytor, which Hickerson also cites, but Hickerson doesn't discuss Branham. Why is it inappropriate to send to the South Carolina Supreme Court to give us some direction, a final answer as to this question? Sure. Both the district court, Judge Childs at the time, and this court had the benefit of Branham. Branham doesn't speak to comment L of the third restatement. Branham and my colleague Mr. Moore, the other Mr. Moore, took pains to say that Justice Kittredge took pains to adopt the restatement third, but if you read the court opinion, the court was well on its way in Branham to the reasonable alternative design standard, and it used the third restatement as an additional ground. The words that Justice Kittredge used there were this approach is in accord with the third restatement. It wasn't adopted. It was at most, I would say, cited approvingly. So then what has the Supreme Court done with 402A? That's the law. That's what the General Assembly enacted back in 1974. What has our Supreme Court done with that? Well, we still look to the comments of 402A. If you look at the Lawing v. Univore, I believe it is, this is a sodium bromate explosion case. It's a warnings case. And the Supreme Court in that case, five justices of our Supreme Court issued three separate opinions. Both the opinion of the court, the concurring opinion, and the dissent all relied on 402A comments to define what a user is under 402A. So we're still applying the comments of 402A in South Carolina. The question has been asked, why didn't the Hickerson court, either the district court, Judge Childs, or this court, why didn't this court rely on Branham? Because Branham doesn't speak. Branham doesn't speak to comment J. Branham doesn't change the law. Branham just clarified an issue of South Carolina law. Was the reasonable alternative design required, or do we just apply the consumer expectations test? And the Branham, the issue going on, we had a line of cases, Claytor is one of them, Bragg v. High Ranger, where the courts were applying the risk utility test and requiring, or at least referencing, a reasonable alternative design. But the court in Branham just clarified, without adopting the restatement third, that that's the way the law was moving. There was no discussion of comment J. And it's really inconsistent. The rest of Branham is inconsistent with the plaintiff's position. This design hierarchy that is a platitudinous idea that engineers may be taught, but it is simply not the law. And the Branham court, Branham is a wide-ranging opinion in product liability law in South Carolina. My colleague, Mr. Moore, is very correct about it. It does touch on a lot of issues. Other similar incidents is one of them. But within the discussion in Branham on the reasonable alternative design, the court took pains and said, we do not suggest a jury issue is created merely because a product can be made safer. That's the argument of the design hierarchy that plaintiffs posit here. We adhere to our longstanding approval of the principle that a product is not in a defective condition, unreasonably dangerous, merely because it can be made more safe. And that's the position of plaintiffs here. This design hierarchy is you don't have to put a warning on it if you can just put a larger guard. If you can do this or that, you can design out a hazard, then the product can be made more safe. And that's not the law in South Carolina. From well before the restatement was adopted through the restatement, there are cases after case that suggest a product is not defective because it can be made more safe. And one meaningful case involving a crane tube blocking accident, the Marchant case, the court analogized to a bicycle with a bell. You don't have to put a bell on a bicycle at the time. You don't have to put disc brakes on a car or a steel belt in your tire. Those are potential ways a product can be made more safe, but it's not required under South Carolina law. And Branham did not change that. Branham left that principle in place. And that's why the court in Hickerson didn't need to reference Branham. But my colleague is wrong about the fact that Branham was brought to the court's attention in Hickerson. I was surprised to read at page 6 of the reply memo that fact it was. The briefs are publicly available. Pages 20 to 22 of the appellant's briefs in Branham argue vociferously. It happened to be my torts professor, Professor David Owen, who was appellant's counsel there. And just the very summary of the argument, reading from the brief, by adopting section 2B of the third restatement in Branham, the South Carolina Supreme Court implicitly adopted its explanatory comments, including comment L. That was not accepted by this court in Hickerson. The court didn't even see fit to respond to that in the opinion, but the opinion did address the other arguments made, such as the public policy argument that my friend has made in his papers. So Branham does not need to be referenced in Hickerson. Branham doesn't change the law. The law is, as the lower court found, based on the restatement, as your Honor mentioned, our General Assembly has spoken to the issue. The second thing is our intermediate courts have spoken to the issue. And my friend again suggests that our Supreme Court hasn't spoken. But I would posit to this court that our Supreme Court has spoken implicitly because three of these cases, Allen v. Long, Anderson v. Greenbull, and Curcio, all went up to the Supreme Court. Twice, cert was denied. Our Supreme Court left in place this language from comment J and the interpretation and application of comment J in both of those cases. More telling, in Curcio, the case went up and the court reversed it without touching comment J, left it absolutely in place. And irony of ironies, the trial court in the Curcio case did not touch comment J. It was presented the restatement third argument. If you read the Court of Appeals opinion in Curcio, the trial judge is quoted, and the trial judge says, Plaintiff urges adoption of restatement third of torts. This is three years after the promulgation of the restatement third, and it's already been presented for the first time to our courts. Plaintiff urges adoption of restatement third of torts, which again, even with an adequate warning. Defendant has demanded adherence to existing South Carolina law. This court declines plaintiff's invitation. The language in Allen v. Long is clear. That was the trial court in 2001. That trial judge was none other than John Kittredge, who sits currently as the Chief Justice of our Supreme Court and the defendant, as I've already told you, he specifically adhered to the issue that a product is not defective simply because it can be made more safe. The restatement third issue has been argued repeatedly and shot down. This is not new. This is not novel. It was shot down in Curcio. It's obviously been shot down in Hickerson by both Judge Childs and this court. It was made to Judge Houck. The late Judge Houck in the Aldana case cited in Hickerson in 2008, and he rejected it. It was made to Judge Childs again after Hickerson in 2021 in the Grubbs v. Walmart case. I apologize. I was not looking at the clock, and I see that I'm out of time. My colleague, Mr. Schillings, will address the second issue. Thank you. Thank you. May it please the court. My name is Scott Schillings. I'm from Wichita, Kansas. I'm a visitor to the Fourth Circuit for the first time. I appreciate you allowing us to split our time. I did not want to walk into the buzzsaw that is this apparent argument about South Carolina laws. I'm not a South Carolina lawyer. What I am is a longtime lawyer handling product liabilities across the country, product liability cases such as this. And I want to point out a couple of things that Mr. Moore said. There wasn't much time spent on this side of the argument, which is whether or not the court abused its discretion in striking the opinions of Dr. Grugel. And also, we also believe that the summary judgment could be affirmed on the grounds that had the issues of Dr. Rondinon's methodology been taken up, that he similarly would have been doing the same thing if he had been stricken for not following any methodology in making his determination or not making a determination as to the cause and origin of the fire, where it started, how it started with Mr. Belger. First thing I want to point out that Mr. Moore said is he says, well, this is a space heater. It's not a space heater. There are several different types of heaters that are manufactured, and they serve different purposes, and they're certified to different purposes. This is an outside radiant heater. It works in the infrared. It produces a hot red surface that radiates heat to heat objects, unlike a space heater, which provides convective heat to heat air. If you're outside, convective heat does not work very well because if there's wind, if there's rain, it's not felt. So this heater, and there's pictures of it in the briefing, glows orange and burns bright, and so that needs to be understood. Now, what happened here was, in addition to the Hickerson issue, Dr. Google was stricken because she didn't follow any appropriate methodology in reaching her opinions, which were just, I guess now they're not warnings opinions, although she was referenced as a warnings expert three times in her report. She never saw one. She's never handled one. She's never used one. She spends six months a year in Hawaii. She's never interacted with one to see the heat that comes off it, to feel the heat that comes off it. Her experience with the heater was she watched five to 15 minutes of a video shown to her by Dr. Google, and it was his alternative design that was put on another heater not even manufactured by my client. So, now, another question that came up, and one of the things that I want the court to be mindful of, is Mr. Moore wants to say that Hickerson was decided wrongly, but Hickerson also struck the opinions of the warnings expert because of a lack of methodology. And if you look and compare what Dr. Caskobar did in his report to what he did in the Hickerson case, where he actually came up with other warnings, tried to change colors, say these are the things that would have prevented this incident where four people were riding on a personal watercraft, that wasn't enough. The Hickerson court said your methodology didn't satisfy, and if you compare what Dr. Caskobar did to what Dr. Google didn't do, there's no comparison. Furthermore, in the Sardi case, which is also Fourth Circuit controlling authority, Sardi, two years before the amendments to Rule 702 were passed, is holding that no longer can it just go to the weight of the evidence, the questions about what you did, whether or not you followed the appropriate methodology, whether you needed to see the expert or not. Now the court has to look, with the admissibility of expert testimony, has to look at it and feel that by a preponderance of the evidence, that expert would satisfy the reliability requirements set forth in Rule 702. So the whole nature of the game that started with Daubert and to Joiner and to Kumo, and for years courts have said, oh, it goes to the weight, not the admissibility, has changed. So I don't think there's anything wrong with that. I don't have any doubt that Google did not follow a necessary methodology, and of course the standard is abuse of discretion. Judge Leiden at the lower court spent nine pages outlining everything she did or didn't do. It cannot be said that she abused her discretion. What I want to do really quickly is flip then to what I think the alternative argument is here, is that if Judge Leiden had not rendered moot the Dr. Rondinon analysis, Dr. Rondinon would suffer from the same lack of methodology, and thus this court can uphold the lower court summary judgment on a total another ground outside of the arguments that are being made about the importance of Hickerson and what the status of South Carolina law is. Dr. Rondinon admittedly did not perform any 921 analysis on the injuries to Mr. Belger. He never looked at the medical records, which showed that the primary burns suffered by Mr. Belger were on the lower back side of his thighs, an area well below where he believes or surmised, he didn't do any testing on it, that the coat may have caught fire while being at the top of the heater. Without doing any 921 analysis, which is of course what is recognized as the methodology for fire cause and origin, he then just proceeded to construct a heater that he says would have prevented this incident without doing any testing to see if that actually made the product more safe or reasonably safe. But the district court didn't do any of this analysis with respect to Dr. Rondinon. That's correct. And the reason why I'm bringing it up is because when I got the verdict, when I saw the order, I was disappointed. We won at the lower court, but I thought with regard to these two experts, their complete lack of appropriate methodology should have barred both. The decision should have been in this court. Go ahead. I'm sorry. The district court never exercised its discretion, never reviewed those, really simply found it was not relevant after finding that Hickerson was binding. And so if we were to either disagree or the South Carolina Supreme Court were to disagree and say that the third restatement is in fact the law, then wouldn't the appropriate next step be for us to remand for the district court to analyze and make that determination in the first instance as the district court judge? It certainly would be acceptable to do that. What I'm saying is that since this court can validate the lower court opinion on any basis, that there's a record before this court by which they could, you could, uphold the lower court's decision based upon a finding also that neither of the experts satisfied the methodology necessary under 702 as amended in 2023. And so, and that's, I think that's important because what's happened in this case is what we had initially as someone who was a human factors expert is now being, this court is being asked to find that that individual is actually a design expert, although she's never designed a heater and there's no qualifications for that. And then secondly, with regard to Mr. Rondinon, they never responded to the arguments that we said that this court could have similarly stricken Dr. Rondinon. They simply said, well, that's not appropriate. It should be a cross appeal, which is not correct because we're not asking for anything to be changed. And then number two, I apologize, dry mouth, but so they, you know, and then what they did was they never responded to it and said, well, we actually identified somebody in a total and other case that we could use him too. So they kind of abandoned Rondinon also. So. Well, but I think the point is that the district judge never really. The district court could not. My only, we just asked that this court or state that this court could also find that the summary judgment wasn't appropriate, was appropriate on the grounds that neither of the experts satisfied the methodology necessary to satisfy the admissibility standards of Daubert, its successor cases and the modified or amended rule 702. Thank you. Thank you. Thank you. Mr. Moore. Thank you, Your Honor. A couple points real quick. If my friend was disappointed with the ultimate outcome in the district's district court's order, it could have filed a rule 59 emotion on the subject of the mooting of the motion regarding our liability engineering expert. We've cited the American roll on and roll off case. I think the Henrico Henrico County School Board case from the Fourth Circuit that say even the successful litigant below, if they are seeking to modify the district court's order, they must cross appeal in order to do that. And here, because there's. Excuse me. Could you turn the timer on? Thank you. And here, because essentially what they're asking the court to do is relitigate this other motion that the district court denied. I think it requires a cross appeal. One case that we haven't talked about is the Miles v. Dessa case. And I think this exemplifies kind of the problem that we have here and the lack of clarity that we have here. So the Miles case is also a case by Judge Childs, the district court in Hickerson. It is almost the exact same product as what we have here. It is a propane tank top heater. And the plaintiffs in that case brought warnings defect claims and design defect claims under South Carolina law. Judge Childs said there is no warnings defect claim because you don't have to warn of something when it is an obvious danger. And that is something that my friends have argued throughout the case when it was in the district court. But they have set forth proof of an alternative feasible design. And that case can go to the jury, which is totally inconsistent with the rule of Hickerson. And it is post-Branham. And it is yet another example of why there is some confusion in this area, even post-Branham. The notion that the Supreme Court in Branham did not adopt the restatement of third for design defect claim, we simply disagree. There have been a number of cases since then, both from our appellate courts and the district court. We have put them in our brief that cite approvingly to the third restatement's comments, particularly for design and warnings issues. The Quinton version. In which, in the Branham case? The one case he is talking about, one of the comments was used to define what a user is, because that had never been defined before in any of our precedents. It was not a case involving whether or not a warning trumps design. There is the Judge Childs again in the Quinton case from 2013 said it is clear that the Supreme Court in Branham embraced, adopted, clear approval of the restatement of third. I'm sorry, the restatement third of torts, section 2B. And then cites to their comments in analyzing a design defect claim. The last thing I wanted to mention that I hadn't yet is that Judge, our district court for this case, in the Gardner Biethycon case that we cite, points out, and this goes to the criticism that a warnings expert essentially is offering a design opinion. That's not what we're doing. We're just talking about how manufacturers design things in this design hierarchy. Our jury charge in South Carolina and Judge Leiden in the Gardner case both recognize that the existence of warnings is a factor to be considered, that a jury can consider in a design defect case. In other words, is the warning given sufficient in a design defect case? They would still have the ability to make that argument before a jury, which is why we proffered Judge Grugel in the first place. This was always a design defect case. This was never a causal warnings defect case. The, it is a matter, an important matter of South Carolina state policy. There is confusion both in our district courts. The Branham case and its adoption of the third restatement. Let me ask you one last question about that, because opposing counsel argues that Branham, that the Supreme Court did not adopt, that they basically just used it for support in their holding. I'm just curious to hear your response. I do not think that that is the way that it has been perceived by the court since that time. In most of the cases that have noted this, albeit a lot of district court cases, and we've cited them in our brief, except the fact that our Supreme Court adopted the restatement third, section 2B for design defect claims in South Carolina. And I don't know how, if that is the rule that we have to prove in South Carolina, if that is our standard, then how can we ignore the comments to that section in favor of the comments of a predecessor section? And because our Supreme Court has never been addressed with this specific issue, whether the existence of an adequate design trumps all design defect claims in South Carolina is simply one that they have an answer to that we would ask this court to certify. Thank you. All right, thank you. We are going to, we're going to recess for today, but before we recess, I do want to thank you all again, and we will have Judge Berner and Judge Gibney step down to greet you, and I apologize that I am not there, but the weather prohibited me from getting to Richmond last evening, and so I greet you from Columbia, but we'll have Judge Berner and Judge Gibney step down and greet you, and court is in recess. Thank you.
judges: DeAndrea Gist Benjamin, Nicole G. Berner, John A. Gibney Jr.